STEPTOE, JUDGE:
In this action Carolyn Jane Miller, as Executrix of the Estate of Ronnie Allen Miller, seeks an award from the Division of Highways, for the wrongful death of her decedent on the 12th day of July, 1991, as a result of negligence of the Division of Highways in the design, construction, and maintenance of West Virginia Secondary Route #2, said public road 2, hereinafter known as Sand Fork Road.
The respondent has denied all of the allegations of the complaint, and has invoked comparative negligence as an affirmative defense.
By agreement of counsel, trial was bifurcated, so that the issue of liability might be resolved before the matter of damages be considered.
At the outset of trial, complainant acknowledged that liability would be predicted upon alleged negligence of respondent in maintaining the road.
The decedent had been employed by the owner of a large quantity of recently cut logs, Bill Petrice, to haul them away from a loading site near Sand Fork Road. After leaving the loading site in his loaded truck about 4:50 p.m. on said date, the decedent entered Sand Fork Road and while proceeding in an easterly direction thereon about a quarter of a mile to a point in a hilly wooded area, his truck went off the southerly side of the road, rolled over and down a steep embankment and struck a tree. Mr. Miller was instantly killed in the cab of the truck.
Decedent had made twenty to thirty earlier trips of like nature, from the loading site and along Sand Fork Road, to his destination for unloading, i
Sand Fork Road is a short connecting public road, incorporated into the State highway system in 1933, since which date said road has been maintained by respondent. It was and is stone-based, and its surface is stone and soil, although its width varies, it is classified as a one-lane road; in most places its width is 13 feet or more, but at the scene of the accident the width is only 10 feet, 7 inches, presumably because of the topography. There are only four to six houses along the road, and its average daily traffic is twenty vehicles. For maintenance purposes, the road is classified "third priority", a low classification, but it receives grading, ditching, and additional stone for the surface from time to time. There was no testimony as to prior accidents on the road. Respondent's witnesses testified that they had received no complaints, before the accident,- about the condition of the road, and claimant produced no evidence to the contrary.
Weather and road surface conditions were bad at the time of and immediately preceding the time of the accident. While decedent was loading his truck with the assistance of Blondail *39 Rohrbaugh, who had cut the logs and brought them to the site at which they were loaded, a heavy rain storm arose with thunder and lightning. Precipitation had somewhat abated before he left, and apparently ended about the time of the accident, but Sand Fork Road was wet and muddy. Visibility was reduced by overhanging clouds, and by fog.
The evidence on the question of causation for this tragic accident is conflicting, complicated by the fact that there were no eyewitnesses.
Complainant advanced two theories of negligent causation on the part of respondent. The first theory is that respondent failed to install and maintain proper erosion and drainage measures to control the accumulation of water in the steep embankment on the south side of Sand Fork Road, at the scene of the accident; that the heavy but brief rainfall of that afternoon exacerbated a previously wet condition of the embankment; and that when the decedent's heavily loaded truck passed over the area, at a point where the road was narrow, a slide occurred, or in the words of the investigating officer, Deputy Sheriff John J. Burkhart, ".. .the roadway edge gave way...", and the truck went down the embankment. Witness Ronnie Allen Miller, Jr., son of the decedent, who made a video tape of the scene on July 16, 1991, and who made measurements, testified that four to six feet of the bank had washed out, and later in his testimony characterized it as a slide.
The problem with this first theory is that neither Deputy Burkhart nor Ronnie Allen Miller, Jr., had ever viewed the scene before the accident, and so were unable to compare the scene as they found it (on July 12, by Burkhart, and on July 16, by Miller, Jr.) with the scene and condition of the road as it was before the accident. Other witnesses who were familiar with the scene before the accident. Other witnesses who were familiar with the scene before the accident, including Blondail Rohrbaugh, the first person on the scene after the accident, testified that the topography had not substantially changed; and the State's district maintenance engineer, Richard Davis, who visited the scene after the accident, apparently in the month of July 1991, testified that there was no evidence of a slide, vertical or parabolic. Miller, Jr., apparently thought that because the roadway at the scene was narrower than elsewhere, the difference (and more) could be attributed to a slide. There was no testimony about an accumulation of earth and rock at or in the vicinity of the bottom of the embankment. According to the testimony, the roadway at the scene received no special attention from the respondent after the accident, and is still in use. Claimant's expert witness, Kenneth Crowley, Ph.. D. (in transportation, planning and engineering), who viewed the scene in August 1991, did not testily to any evidence of a slide, nor did the investigating officer, who testified only that the road gave way in his opinion.
The second theory, adopted by Dr. Crowley, is that respondent was negligent in failing to provide and maintain adequate drainage of surface water on and below Sand Fork Road, as a result of which failure the roadway at the scene of the accident, and below it on its southern side, became saturated, and lost its capacity to carry the weight of vehicles passing over it. This theory assumes that the Miller truck approached the narrow (10'7") area of the road, and on reaching said narrow area, the forward area of the truck passed over water-soaked road surface material, and that the *40 middle and rear areas of the truck were so heavy that the berm material subsided, the rear end of the truck fell off the road, and the front end of the truck followed, and the whole truck violently struck a tree.
Three photographs of the scene of the accident, taken by Deputy Burkhart late on the day of the accident, were introduced, but were of such poor quality, due to absence of sufficient light and to inadequate photographic equipment, that they are of little evidentiary value. A video tape taken by Miller, Jr., on July 16, 1991, was helpful, as were photographs taken on July 19 and 20, by a member of the staff of claimant's attorney; but the video and these photographs were taken after the truck and the logs had been brought up from the embankment to the road, on July 13, during which activity the condition of the embankment and of the edge of the roadway was extensively disturbed by the heavy equipment used for such purpose, skids, winches, and wrecker truck equipment.
Blondail Rohrbaugh, who had helped the decedent load his truck, came by the scene of the accident about 10 minutes after the decedent had left the loading area, and saw something beside the road he thought was unusual, so he stopped, backed up, and found the truck. After establishing the he could do nothing for Mr. Miller, he hurried to the nearest telephone to report the accident, and after having done so, immediately returned to the scene of the accident, and waited for the arrival of police and emergency vehicles. While waiting he observed truck imprints in the muddy road, staring about 100 feet or more west of the scene and leading eastwardly to the scene of the accident. His testimony was:
Well, I tracked the truck where it come out of a little curve there and he didn’t cut it. He just drove it right on straight over the hill. That's what I couldn't figure out. He just naturally drove the truck right out of the road and right over the hill. You could just track it plain. Well, two or three weeks after you could yet see where the truck went. I showed a lot of people.
The tracks were also seen by Brian Skidmore, Darrell Ferguson, and Ronnie Ferguson, firemen from the Jackson's Mill Volunteer Fire Department, who were the first persons to arrive on the scene after Rohrbaugh, and who testified as to the tracks leading up to the scene of the accident, just as Rohrbaugh testified. The foregoing testimony of Rohrbaugh, Skidmore, Ferguson, and Ferguson was not controverted.
The Court does not know, nor does anybody know apparently, who the logging truck was driven in a straight line until it slipped off the southerly side of Sand Fork Road, and turned over, and plunged down the embankment. When on the same course of a road that has curves, it is inevitable that a vehicle will get off the road and into trouble. In this case, the logging truck was driven further and further from the middle of the traffic lane and onto the south edge of the road and then went out of control; and this was the sole cause of the accident.
*41 Respondent has disapproved the theory that the accident was caused by a slip or cave-in of part of the road.
Claimant has failed to prove by a preponderance of the evidence that a soft area at or near the south edge of the road (if there were one) was the proximate cause of the accident.
For the foregoing reasons, the claim is denied.
Claim disallowed.
(Judge Baker did not participate in the hearing or the decision of this claim.)